Magistrate Judge Michelle L. Peterson

FILED ____ ENTERED
LODGED ____ RECEIVED

MAY 24 2024

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JESUS ORTIZ-PLATA and<br><br>JUAN PABLO CUELLAR MEDINA,<br><br>Defendants. | CASE NO. MJ24-312<br><br>COMPLAINT for VIOLATIONS<br><br>Title 8, U.S.C.<br><br>Sections 1324(a)(1)(A)(ii), (v)(I) and (B)(1) |

BEFORE, Michelle L. Peterson, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT ONE

**(Conspiracy to Commit Illegal Transportation of an Alien, Private Financial Gain)**

On or about May 23, 2024, in Whatcom and Snohomish County, within the Western District of Washington, JESUS ORTIZ-PLATA and JUAN PABLO CUELLAR MEDINA did knowingly and in reckless disregard of the fact that certain aliens, A.P.M., E.Z.C., and D.Z.C., had come to, entered and remained in the United States in violation

Complaint - 1
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of law, did conspire to transport and move and attempt to transport and move said aliens within the United States by means of transportation and otherwise and in furtherance of such violation of law to help remain in the United States, and did so for private financial gain.

All in violation of Title 8, United States Code Section 1324(a)(1)(A)(ii) and (v)(I) and (B)(i).

And the complainant states that this Complaint is based on the following information:

I, David Spitzer, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since January 2020. In February 2021, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia. While at FLETC, I received nearly 1000 hours of training in such areas including, but not limited to criminal law, human smuggling/trafficking investigations, and criminal procedures. Prior to being employed with HSI, I was employed as an agent with the United States Border Patrol (USBP) for eleven years and was assigned to the Sector Intelligence Units in El Centro, CA, and Blaine, WA. In this capacity, I was responsible for conducting criminal investigations regarding the violation of immigration laws of the United States. In 2009, I graduated from the United States Border Patrol Academy at the FLETC in Artesia, New Mexico. My education includes a Bachelor of Arts degree in Political Science and a Bachelor of Arts degree in Criminology from the University of Florida.

2. I am assigned to HSI's Border Security Enforcement Team (BEST) and Air and Marine group in Blaine, WA (hereinafter "HSI Blaine"), which focuses on the enforcement of immigration and narcotics laws, including human trafficking and

Complaint - 2
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

smuggling, as well as the investigation of transnational gangs. I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am authorized to investigate and enforce violations of federal criminal statutes, including those in Titles 8, 18, and 21 of the United States Code.

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this Complaint is submitted for the limited purpose of establishing probable cause, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Jesus ORTIZ-PLATA and JUAN PABLO CUELLAR MEDINA have committed the offense of Conspiracy to Transport and Harbor Certain Aliens for Profit, in violation of Title 8, United States Code, §§ 1324(a)(1)(A), (ii), (iii), (v)(I), and (B)(i).

## SUMMARY OF PROBABLE CAUSE

### Background

5. In July 2023, Homeland Security Investigations (HSI) and the United States Border Patrol (USBP) began investigating a human smuggling organization that was suspected of smuggling noncitizens into the United States through the U.S. – Canada border in Whatcom County, Washington. Based upon information obtained during investigations of human smuggling into the United States through Blaine, Washington, Border Patrol Intelligence agents identified the phone number, (360) 618-1885 (hereinafter, referred to as TT1) as being associated with numerous human smuggling events. This phone number is associated with an individual identified through interviews

Complaint - 3
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and cellular phone analysis as "Chuy". Through this investigation, Chuy has been identified as Jesus ORTIZ-Plata

6. Based upon interviews, analysis, physical and electronic surveillance, investigators observed a pattern involving ORTIZ-Plata traveling from Oregon to the Seattle metropolitan area that involved the suspected transportation of noncitizens who were being smuggled into the United States. Based upon facts discovered during this investigation, there is probable cause to believe that ORTIZ-Plata also was responsible for coordinating and assisting the unlawful entry of non-citizens into the United States.

7. During this investigation, ORTIZ-Plata would use hotels in the Everett, WA area to harbor suspected noncitizens, as well as transport suspected noncitizens from the Seattle metropolitan area to locations in Oregon, California, and elsewhere in the United States.

8. Based upon information obtained during investigations of human smuggling into the United States through Blaine, Washington, Border Patrol Intelligence agents identified TT1 as being associated with at least six different human smuggling events.

9. Information obtained during the investigation indicates that smuggling organizations are using cellular telephones to direct noncitizens before and during their unlawful entry into the United Sates, as well as to coordinate the pick-up of the noncitizens once they have unlawfully crossed into the United States. TT1 is associated with an individual identified through interviews and cellular phone analysis as "Chuy".

10. Specifically, on September 18, 2022, at approximately 2:12 a.m., Border Patrol agents assigned to the Sumas Station arrested two Mexican nationals unlawfully entering the United States near Sumas, WA. Based upon subsequent interviews, E.S.P.[1]

---

[1] E.S.P. provided a voluntary statement to BPAs subsequent to his/her unlawful entry into the United States. E.S.P.'s only criminal history is related to his/her unlawful entry into the United States. E.S.P. is not receiving any benefit for providing the information.

Complaint - 4
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and J.S.C.[2] were provided TT1 by the Canadian-based facilitator and told them that "Chuy" would pick them up after their unlawful entry into the United States and drive them to Oregon.

11. On November 26, 2022, at approximately 6:30 p.m., Border Patrol agents assigned to the Sumas Station arrested five Mexican nationals unlawfully entering the United States near Sumas, WA. A post-arrest interview of I.A.C.[3] revealed that her father made arrangements with a smuggler named "Chuy" and provided TT1 as "Chuy's" phone number. I.A.C. further stated that "Chuy" was responsible for successfully smuggling many people previously into the United Sates.

12. On December 3, 2022, Border Patrol agents assigned to Blaine Station arrested four Mexican nationals attempting to unlawfully enter the United States near Blaine, WA. One of the noncitizens, E.G.I.[4], had a contact in his/her phone of TT1 listed as "Juan Pablo" and multiple WhatsApp[5] messages between E.G.I. and the user of TT1 referencing smuggling.

13. On July 18, 2023, Border Patrol Agents (BPAs) assigned to the Blaine Station conducted a vehicle stop on a Chrysler Pacifica minivan after it was observed multiple times in a short period of time near the United States – Canada International Boundary in an area known for human smuggling. Based upon interviews with the

---

[2] J.S.C. provided a voluntary statement to BPAs subsequent to his/her unlawful entry into the United States. J.S.C.'s only criminal history is related to his/her unlawful entry into the United States. J.S.C. is not receiving any benefit for providing the information.
[3] I.A.C. provided a voluntary statement to BPAs subsequent to his/her unlawful entry into the United States. I.A.C.'s only criminal history is related to his/her unlawful entry into the United States. I.A.C. is not receiving any benefit for providing the information.
[4] E.G.I. provided a voluntary statement to BPAs subsequent to his/her unlawful entry into the United States. E.G.I.'s only criminal history is related to his/her unlawful entry into the United States. E.G.I. is not receiving any benefit for providing the information.
[5] Based upon my training and experience, I know that WhatsApp is an open-source messaging application available on both Android and iPhone smart phones, and Apple and Windows personal computers. I know that the account number for a WhatsApp account must be associated with a cellular telephone number. I also know that to log into a WhatsApp account from another digital device, i.e., that is not associated with the telephone number for the WhatsApp account, a user must have access to the cellular telephone associated with the account for initial login on a new device.

Complaint - 5
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

occupants of the vehicle, it was determined that there were seven undocumented noncitizen passengers in the vehicle that had just unlawfully crossed from Canada into the United States.

14. During a custodial interview with one of the two United States citizen smugglers encountered in the vehicle, CS-1[6] stated that he/she had been in contact with the user of TT1 before and during the attempted smuggling event. CS-1 stated that the user of TT1 goes by the moniker "Chuy". According to CS-1, "Chuy" is a human smuggler who, on several occasions, has instructed him/her when and where to pick up people near the U.S – Canada International Boundary. CS-1 informed investigators that he/she had picked up undocumented noncitizens for "Chuy" on at least three previous occasions and would personally deliver them to "Chuy" in Oregon. For these services, CS-1 stated that "Chuy" agreed to pay him/her $500 per person. CS-1 further mentioned that "Chuy" works with other human smugglers in Canada, and one of their main smuggling routes was to smuggle people into the United States from Canada on trains.

15. CS-1 voluntarily granted agents written consent to search his/her phone. During a review of the phone, I observed communications on the WhatsApp application with TT1 that corroborated the information given during the interview.

16. Six of the seven undocumented noncitizens admitted to making arrangements with "Chuy" to be smuggled illegally into the United States. Two of the noncitizens provided TT1 to agents as the phone number for "Chuy". They admitted to previously being in contact with Chuy prior to their illegal entry into the United States.

---

[6] CS-1 is cooperating with HSI in hopes of potential prosecutorial consideration given his/her concern that he/she would be implicated in the illegal conduct targeted by this investigation. CS-1's only criminal history is related to the smuggling event involving ORTIZ in July 2023. CS-1 has not previously been a confidential informant with HSI or any other law enforcement agency. CS-1 has provided background information on ORTIZ via statements and/or cellular phone analysis. The information provided by CS-1 has been corroborated through other means and has been shown to be reliable.

Complaint - 6
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17. During one of the post-arrest statements, Y.R.T.[7] stated that when he/she spoke to "Chuy" on TT1 in Canada, he/she asked him if he helps cross people into the U.S. and he stated, "Yes, I do it from time to time."

18. On November 27, 2023, at approximately 4:00 p.m., I spoke with CS-1 via telephone, during which time he/she confirmed the information given months prior and informed me that the user of TT1 is the same individual who goes by "Chuy". On at least three occasions, at "Chuy's" direction, via in-person meeting and/or by telephone using TT1, he/she was asked to travel to Blaine, WA at a predetermined location near the border that was given via WhatsApp message from "Chuy" via TT1 to pick up people and deliver them to an Oregon gas station in exchange for $500 per person.[8] According to CS-1, he/she hasn't spoken to "Chuy" in several months.

19. On November 29, 2023, at approximately 2:55 p.m., HSI Portland special agents conducted a consensual interview with CS-1 and presented him/her with a six-pack photographic lineup. When asked if he/she recognized anyone, CS-1 informed agents that photograph number 4 depicted "Chuy". The photograph identified by CS-1 depicted the driver license photograph of Jesus ORTIZ-Plata.

20. On August 31, 2023, at approximately 1:00 a.m., Customs and Border Protection (CBP) officers assigned to the rail facility in Blaine, WA observed x-ray anomalies of possible concealed persons inside a rail car containing bulk plastic pellets. After searching the rail car, CBP officers found 29 undocumented noncitizens attempting to conceal themselves. 28 of the subjects were determined to be Mexican nationals, while one was a Colombian national and identified as the individual guiding the group

---

[7] Y.R.T. provided a voluntary statement to BPAs subsequent to his/her unlawful entry into the United States. Y.R.T.'s only criminal history is related to his/her unlawful entry into the United States. Y.R.T. is not receiving any benefit for providing the information.

[8] According to CS-1, he/she has spoken to "Chuy" using TT1 on numerous occasions and knows that the user of TT1 is ORTIZ (aka "Chuy") based upon both phone conversations and face-to-face meetings.

Complaint - 7
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and instructing people where to hide and how to conceal themselves from detection by law enforcement.

21. Interviews were conducted with the Mexican nationals and several of them stated that they made arrangements with "Chuy". At least one of the noncitizens was able to provide agents with "Chuy's" phone number and agents confirmed that it was TT1.

22. On November 10, 2023, at approximately 11:00 p.m., CBP officers intercepted another train and found 13 Mexican nationals, many of which attempted to abscond after the train was ordered to stop by CBP officers.

23. During the subsequent interviews with the noncitizens, it was determined that three of the subjects had been in contact with "Chuy" using TT1 both while in Mexico and in Canada. Two of the individuals stated that they made arrangements with "Chuy" to be smuggled into the United States unlawfully and agreed to pay "Chuy" $8,000 upon successfully being transported to Oregon.

**Arrest on May 23, 2024**

24. On May 23, 2024, at approximately 5:30 a.m., Homeland Security Special Agent David Spitzer reviewed court authorized GPS phone ping data and GPS tracking data for ORTIZ-Plata's vehicle, which both indicated that ORTIZ-Plata was traveling north from the Portland, Oregon area towards Seattle, Washington. As part of the investigation into ORTIZ-Plata, agents believed that ORTIZ-Plata frequently traveled from Oregon to various locations in the greater Seattle area and was believed to transport undocumented noncitizens to locations in Oregon and California.

25. At approximately 9:45 a.m., agents established surveillance of ORTIZ-Plata's vehicle on Interstate 5 near Lynnwood, Washington. Agents maintained surveillance of the Cherokee, with assistance from the Bellingham Air and Marine (AMO) branch, as the vehicle exited I-5 in Everett, WA. Agents maintained surveillance of the Cherokee as it drove into the parking lot of an apartment complex, located at 120

Complaint - 8
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

SE Everett Mall Way in Everett, WA. Agents had previously identified this location as an area frequented by ORTIZ-Plata, based on GPS tracking data. Agents suspected that this area is a location that ORTIZ-Plata utilizes to pick up undocumented noncitizens prior to their transportation in furtherance of their unlawful entry into the United States.

26. Shortly after the Cherokee arrived and parked at the apartment complex, Border Patrol Agent Gonzalez observed ORTIZ-Plata exit the Cherokee and walk into an apartment, later identified as apartment number 611.

27. At approximately 10:25 am, Border Patrol Agent Marroquin observed ORTIZ-Plata and three other male subjects, walking from the direction of apartment 611. Border Patrol Agent Gonzalez saw all four subjects get into the Cherokee with ORTIZ-Plata as the driver of the vehicle. Agents immediately detained all four subjects, who were all seated in the vehicle, pending an investigation into suspected human smuggling.

28. Border Patrol Agent Marroquin and Border Patrol Agent Singh questioned the three passengers of the Cherokee as to their citizenship and nationality. The three subjects were identified as E.Z.C, D.Z.C., and A.P.M. Agents Marroquin and Singh determined all three subjects to be undocumented non-citizens and unlawfully present in the United States. Special Agent Spitzer and Border Patrol Agent Gonzalez subsequently informed ORTIZ-Plata he was under arrest for suspicion of alien smuggling and read ORTIZ-Plata his *Miranda* rights in the Spanish language. Agents did not question ORTIZ-Plata further at that time.

29. Following the detention of the subjects in the Cherokee, agents conducted a knock and talk on apartment 611. CUELLAR-Medina told agents he was the only remaining occupant of apartment and consented to a search of the residence. Agents conducted a search of apartment and confirmed CUELLAR-Medina had been the only remaining occupant.

30. CUELLAR-Medina was subsequently placed under arrest for suspicion of alien smuggling and read his *Miranda* rights in Spanish. CUELLAR-Medina

Complaint - 9
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

acknowledged that he understood his rights. Agents did not question CUELLAR-Medina further at that time.

31. ORTIZ-Plata, CUELLAR-Medina, and the three passengers were transported to HSI's office in Ferndale for questioning.

32. Border Patrol agents subsequently interviewed D.Z.C in Spanish. He explained that he left his home in Honduras in 2017 or 2018 and that he entered the United States illegally and does not have any documents that would permit him to remain in the United States lawfully. He stated he had recently been living and working in Canada, but decided to return to the United States with his brother, E.Z.C. About three days before his arrest, he and E.Z.C., had flown to Vancouver, British Columbia, in order to be smuggled back to Portland, Oregon.

33. D.Z.C and his brother had arranged to each pay $4000 to an unknown smuggler to take them to Portland, Oregon. On May 22, 2024, at approximately 10:00 p.m., while still in Canada, an unknown Hispanic male picked him and his brother up from a bus stop and drove them to a train station. Once at the train station, a third man, the man who was also arrested with him, was waiting for him. The Hispanic male told them to climb onboard the train and hide in the natural voids within the rail cars of the freight train. D.Z.C. said that they rode the train for approximately two hours before they got off and were picked up by an unknown person and driven for approximately 30 minutes before arriving at an apartment. D.Z.C. said that they arrived at the apartment at approximately 2:00 a.m. and stayed at that location until they were arrested that morning. D.Z.C. said that during his stay at the apartment, the man who picked them up did not provide them with food or water.

34. During the interview, in an effort to identify ORTIZ-Plata, D.Z.C was shown a 6-pack photographic lineup, but was unable to identify anyone. Later in the interview, D.Z.C. was subsequently shown another 6-pack photographic lineup in an effort to identify CUELLAR-Medina. From this second photographic lineup, D.Z.C. was

able to positively identify picture #5, which depicts Juan Pablo CUELLAR-Medina. D.Z.C. stated that CUELLAR-Medina was the person that picked all three of them up after they got off the freight train and drove them to the apartment.

35. Border Patrol agents interviewed E.Z.C. in Spanish. He explained that he has been living in Calgary, Canada for the past four months with his brother D.Z.E., and had both decided to return to Portland, Oregon. According to E.Z.C. he and his brother took a bus to Vancouver, British Columbia, and made arrangements with an unknown smuggler to be taken to Portland, Oregon, for $2000 each.

36. E.Z.C. explained that earlier that day, at around midnight, an unknown Hispanic or Colombian male picked him and his brother up from a hotel and drove them to a place in Vancouver, Canada, where they were told to get on a train. Once at the location of the train, a third male, the male who was arrested with him, was also at the location waiting. The three men were instructed to climb and hide in the natural voids within the railroad cars of the freight train. They rode the train for approximately three hours before they got off and were picked up by an unknown person. Once inside the vehicle, they traveled for about thirty minutes before arriving at an apartment. They stayed there until they were arrested. During the time they were at the apartment, the person did not provide them with food or water. E.Z.C was unable to identify CUELLAR-Medina or ORTIZ-Plata from the 6-pack photographic line ups.

37. Border Patrol Agents interviewed A.P.M. in Hindi. A.P.M. explained that he left India around 15 days ago and flew into Toronto, Canada. Once he was in Toronto, he decided to travel to the United States. A person from his village put him in contact with a person who could facilitate his travel into the United States illegally. A.P.M. claimed that he did not pay or know how much he was going to pay for his illegal entry. A.P.M. said that he arrived in Vancouver five days before his arrest and took a taxi from the hotel to a train station where he claimed to have met an individual in a white vehicle who drove him to the border for his illegal crossing. He said that he was directed to walk

Complaint - 11
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

across the border to a waiting vehicle. Once inside the vehicle, he was driven to a house where the three remained for the night. On the morning of his arrest, he was directed to go to a vehicle parked outside. A.P.M. was unable to identify CUELLAR-Medina or ORTIZ-Plata from the 6-pack photographic line ups.

38. Based on the above facts, I respectfully submit that there is probable cause to believe that JESUS ORTIZ-PLATA and JUAN PABLO CUELLAR MEDINA did knowingly and intentionally commit the aforementioned offense, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (A)(v)(i), and (B)(1).

David Spitzer, Complainant
Special Agent, Homeland Security

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendants committed the offense set forth in the Complaint.

Dated this 24th day of May, 2024.

Michelle L. Peterson
United States Magistrate Judge

Complaint - 12
United States v. / MJ24-312

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970